In the Matter of the Petition of QUEENS COUNTY BAR ASSOCIATION in Respect of THOMAS F. TEVLIN, an Attorney and Counselor at Law, Respondent.

Second Department, April 30, 1937.

*Walter J. Hess*, for the motion.

*Thomas F. Tevlin*, in person, opposed.

PER CURIAM. Three charges have been preferred against the respondent, who was admitted to the bar in 1909. The most serious of these grows out of certain Surrogate's Court proceedings n the county of Queens.

One Stalla Gier was appointed general guardian of her son, Michael Gier, on November 10, 1911. She resigned, and Laura Ratke was appointed in her place on July 8, 1912. Stalla Gier, then Stalla Fabisewski by name, was her bondsman.

Among the assets set forth in the account of Stalla Gier was an $1,800 mortgage, which was bought by her during her general guardianship. This mortgage, it seems, was not transferred by Stalla Gier to Laura Ratke, as it should have been, but was assigned to one Klingenbeck, who, on January 22, 1914, assigned it to Margaret A. Tevlin, wife of respondent. On March 9, 1914, Margaret A. Tevlin reassigned the mortgage to Klingenbeck, who later assigned it to some third person and gave a satisfaction piece.

The official referee has found, and the facts justify the conclusion, that the respondent wrongfully participated in the proceeds of the $1,800 mortgage.

In December, 1913, Laura Ratke petitioned the Surrogate's Court to have her account judicially settled and for permission to resign as general guardian, and for the reappointment of Stalla Gier, now known as Stalla Fabisewski. The name of Thomas F. Tevlin appears upon the legal back of the petition and the account. The mortgage was not mentioned in this account. Respondent denied that he was the attorney for Ratke, but his participation in the conversion of the proceeds of the mortgage and the testimony of one Leslie Frank, who was appointed special guardian in the accounting proceedings of Laura Ratke, indicate very clearly that respondent was acting for the Ratke woman in that matter. In a proceeding which will be considered later, Laura Ratke gave testimony that respondent was not her attorney. However, she was not called in this disciplinary proceeding.

The next time that respondent appeared in this matter was in 1929, when Michael Gier attained his majority. Michael had not received any part of his estate. Stalla Gier and her son Michael called at respondent's office to ascertain what had become of the proceeds of the $1,800 mortgage and the other assets of the estate. Respondent was retained by Stalla Gier to make an investigation, for which he was to receive a fee of $100. He thereafter was paid a fee of $100, received from the son. In the receipt it is recited that it is in payment for services rendered and expenditures made at the request and for the benefit of Stalla Gier, mother and former guardian of Michael Gier; said services having been heretofore rendered. By the retainer from Michael Gier, respondent was to have one-third of whatever he recovered.

On January 20, 1930, respondent, acting as attorney for Michael Gier, filed a petition for a citation requiring his former client, Laura Ratke, to account. On September 25, 1930, the account was judicially settled, and Laura Ratke was discharged. Respondent, appearing for Michael Gier, consented to the settlement of the account, which showed no receipts and no disbursements by Laura Ratke, as guardian of Michael Gier. Undoubtedly, this was done because Stalla Gier was on the bond of Laura Ratke, and if Laura Ratke was surcharged, then Stalla Gier would have to respond. That, however, is not what the respondent was seeking.

In April, 1931, respondent, acting for Michael Gier, commenced an action against the American Surety Company of New York, which was surety on the bond of Stalla Gier, to recover the sums of money belonging to Michael, which he had never received. That action seems to have been abandoned.

On September 16, 1931, respondent, on behalf of Michael, filed a petition in the Surrogate's Court to require Laura Ratke to show

cause why the decree settling her account should not be set aside and why Michael Gier should not be permitted to file objections to her account. An order was made on February 16, 1932, vacating Laura Ratke's account and permitting Michael Gier to file objections to it. Respondent appeared as attorney for Michael, and again in opposition to Laura Ratke, although he had appeared for her in 1913, as above stated. Laura Ratke was surcharged with the sum of $1,395.61, cash received, with interest from July 3, 1912. This surcharge has never been paid, because, as will appear, the surety company was pursued, and not Laura Ratke, on whose bond Stalla Gier was liable.

On August 25, 1931, respondent, in behalf of Michael, obtained an order from the Surrogate's Court vacating the decree of July 3, 1912, settling the account of Stalla Gier, and directing her to file a true and proper account. Objections were made by respondent to the account filed by Stalla Gier, although she had been his client in making an investigation concerning her son's property.

It is charged, and the proof bears it out, that Stalla Gier, in this proceeding just mentioned, was represented by an attorney who was merely a " dummy " for respondent. This attorney was chosen by respondent. He never received any fee for his services, and his client, Stalla Gier, knew nothing about him. On the second day of the hearing he withdrew from that case.

It thus appears that respondent acted for Laura Ratke in 1913; that Stalla Gier was on her bond; that in 1930 respondent proceeded against Laura Ratke; that in 1929 he accepted a retainer from Stalla Gier, and yet proceeded against her to have her 1912 account opened, and filed objections against her new account and to have her surcharged in the sum of $6,306.86, which was paid by the surety company.

Respondent's story in connection with the assignment of the $1,800 mortgage to Klingenbeck, and from Klingenbeck to respondent's wife, and back again, is fantastic and palpably false, and was not credited by the official referee. The official referee has found that, in matters involving the same subject-matter, respondent represented Laura Ratke in 1913 and was opposed to her in 1930; that in 1929 he was retained by Stalla Gier to ascertain the manner in which funds of her ward had been used, for which he received $100; that upon a contingent retainer he commenced a proceeding against Stalla Gier to reopen her account. Thus, in the same matter, he was at one time for and at another time against Stalla Gier. The official referee also found that when respondent investigated the matter for Stalla Gier in 1929, he represented conflicting

interests, because he had accepted a retainer from Stalla Gier and then began a proceeding against Laura Ratke, on whose bond Stalla Gier was surety.

The second charge grows out of the withdrawal from the funds of the estate, of which respondent was executor, the sum of $5,200 for legal services alleged to have been rendered by him. The surrogate reduced the sum to be awarded to respondent to $2,500, and the respondent was surcharged to the extent of $2,700, for the failure to pay which he was committed to jail, where he remained for one year. The large difference between the sum withdrawn and the sum allowed indicates, in effect, a conversion of estate moneys.

The third charge demonstrates some sharp practice on the part of respondent, who endeavored to delay certain creditors in procuring judgments against a certain corporation which he represented, in order that certain judgments which he and others held might be in a preferred status for the purposes of collecting out of the assets of the corporation. The efforts were abortive.

The official referee recommends that respondent should be disbarred. The court has come to the conclusion that the respondent is guilty of flagrant violations of duty as an attorney, is no longer entitled to engage in the practice of his profession, and that the report of the official referee should be confirmed.

The motion to confirm the report of the official referee should be granted, respondent disbarred and his name ordered to be struck from the roll of attorneys.

Present — LAZANSKY, P. J., JOHNSTON, ADEL, TAYLOR and CLOSE, JJ.

Motion to confirm report of official referee granted, respondent disbarred and his name ordered to be struck from the roll of attorneys.